## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHELLE BARBIAUX | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION No. |
| | ) | |
| v. | ) | |
| | ) | **ELECTRONICALLY FILED** |
| SOLDIER ON, INC. | ) | |
| | ) | |
| Defendant. | ) | **COMPLAINT** |
| | ) | |
| | ) | |
| | ) | |
| | ) | Filed on behalf of Plaintiff: |
| | ) | MICHELLE BARBIAUX |
| | ) | |
| | ) | Counsel of Record for Plaintiff: |
| | ) | CAROLYN E. PALETTA, ESQUIRE |
| | ) | PA I.D. #314230 |
| | ) | NICHOLAS PAHUTA, ESQUIRE |
| | ) | PA I.D. #324355 |
| | ) | STEELE SCHNEIDER |
| | ) | 428 Forbes Avenue, Suite 700 |
| | ) | Pittsburgh, PA 15219 |
| | ) | 412-235-7682 (p) |
| | ) | 412-235-7693 (f) |
| | ) | carolynpaletta@steeleschneider.com |
| | ) | nicholaspahuta@steeleschneider.com |
| | ) | |
| | ) | |

**JURY TRIAL DEMANDED**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

MICHELLE BARBIAUX    )
           )
     Plaintiff,   )  CIVIL ACTION No.
           )
 v.         )
           )  **ELECTRONICALLY FILED**
SOLDIER ON, INC.    )
           )
     Defendant.  )
           )

## COMPLAINT

Plaintiff Michelle Barbiaux, by and through her attorneys, Carolyn Paletta, Esquire, Nicholas Pahuta, Esquire, and STEELE SCHNEIDER, files this Complaint against Defendant Soldier On, Inc., and in support thereof avers as follows:

### Jurisdiction

1.  This is an action under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2615(a)(2) and 29 C.F.R. § 825.220(c).

2.  This Court has subject matter jurisdiction over Plaintiff's FMLA claim pursuant to 28 U.S.C. § 1331.

3.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this claim occurred in this judicial district.

### Parties

4.  Plaintiff Michelle Barbiaux is an adult individual who resides at 118 Orr Avenue, Cheswick, Pennsylvania 15024.

5.      Defendant Soldier On, Inc. is a Massachusetts non-profit corporation with its principal office located at 290 Merrill Road, Pittsfield, Massachusetts 01201.

## Factual Background

### Barbiaux's Worksite

6.      At all relevant times, Barbiaux worked remotely from her home office in Southwestern Pennsylvania and utilized a company vehicle for work-related travel.

7.      At all relevant times, Soldier On maintained two separate offices located 36 miles apart:  425 North Main Street, Building 6, Leeds, Massachusetts 01053 and 360 West Housatonic Street, Pittsfield, Massachusetts 01201.

8.      At all relevant times, Barbiaux received work assignments from and reported to her supervisors and other Soldier On staff at the Leeds office.

9.      At all relevant times, Soldier On employed 50 or more employees within a 75 mile radius of Barbiaux's Leeds worksite.

### Barbiaux's Job Duties

10.      Soldier On hired Barbiaux as an "outreach case manager" on April 14, 2014.

11.      In mid-December 2014, Barbiaux's title was changed to "employment specialist."

12.      Barbiaux was not provided a formal job description that delineated her new duties under this reassignment.

13.      As an employment specialist, Barbiaux's daily tasks included:  working in conjunction with the case management team to assist Veterans in career counseling, networking, and connecting to resources in an effort to secure employment; assisting Veterans in resume building, job searches, interviewing, communication, and preparing Veterans for employment,

among many other tasks; conducting outreach and networking activities in the community; maintain necessary documentation for Supportive Services for Veteran Families' clients; promote the success and reputation of the Supportive Services for Veteran Families program.

### Events Leading Up to Barbiaux's Request for FMLA

14.     In the months prior to Barbiaux's request for time off under FMLA, she began developing symptoms of major depression and anxiety.

15.     These were recurring conditions that Barbiaux suffered from for several years, and for which she treated with a clinical psychologist.

16.     During mid-2017, these particular symptoms were triggered by the lack of accountability, supervision, support, and response from other staff to Barbiaux's communications.

17.     Barbiaux's depression and anxiety were manifested in Barbiaux not being able to carry out the essential functions of her job, tearfulness, losing sleep, having difficulty concentrating, and feeling deflated.

18.     On August 4, 2017, Barbiaux had an appointment with her psychologist to discuss the most recent triggering events at work and their effect on her health and ability to do her job.

### Barbiaux's Medical Leave from Soldier On

19.     On August 8, 2017, Barbiaux notified the Director of Human Resources, Dan Hunter, of her depression disability and requested Family and Medical Leave (FML) on the basis of her disability.

20.     This was Barbiaux's first request for FML since her employment began with Soldier On on April 14, 2014.

21.     Later that day, Hunter emailed Barbiaux a job description for a case manager to assist her psychologist with filling out a Certification of Health Care Provider for Employee's Serious Health Condition.

22.     Barbiaux responded to Hunter that she was not a case manager, but had been re-assigned as an employment specialist in December 2014.

23.     Barbiaux informed Hunter that she had never been given a job description for her role as an employment specialist or any resources to develop her new position.

24.     In fact, no one from Soldier On ever followed up with her after her re-assignment to ask what she was working on or gave her a job description for an employment specialist.

25.     On August 9, 2017, Barbiaux treated with her psychologist again, who completed a Certification of Health Care Provider for Employee's Serious Health Condition.

26.     On the certification, the psychologist indicated that Barbiaux's recurring major depression began approximately in June 2017 and that her current diagnosis on August 9, 2017 was major depression, recurrent, moderate.

27.     The psychologist also indicated that Barbiaux was unable to perform face to face meetings with clients, outreach duties and attend meetings, all of which were functions of her job as an employment specialist, regardless of whether they were formalized as part of a job description.

28.     Finally, Barbiaux's psychologist noted that she would be incapacitated for at least the next two weeks, that she would need weekly therapy appointments, that her condition would cause episodic flare-ups that might prevent her from performing her job functions, and that as a result of any flare-ups, Barbiaux would need to be absent from work during those episodes.

4

29.     Barbiaux provided her psychologist's certification to Hunter.

30.     On August 10, 2017, Hunter informed Barbiaux via email that Soldier On had approved her request for two weeks paid leave under FMLA, effective August 8 until August 23, 2017.

31.     In that same email, Hunter asked Barbiaux to keep him informed of any change in her condition that would allow her to return to work sooner.

32.     During her two weeks off of work, Barbiaux treated with her psychologist.

33.     After working with her psychologist to identify areas in which she would need ADA accommodations upon returning to work August 23, 2017, Barbiaux emailed Hunter a list of requested ADA accommodations on August 11, 2017.

34.     In the August 11 email, Barbiaux also requested a meeting with Hunter and/or senior management to discuss her requested accommodations after the completion of her two-week FML.

35.     Instead, Hunter coordinated a meeting between Barbiaux, her Field Supervisor, and the Director of Supportive Services for Veteran Families.

36.     Barbiaux indicated that she was uncomfortable speaking to her Field Supervisor and the Director of SSVF given the sensitive nature of her depression disability. Barbiaux was uncomfortable sharing the details of the mismanagement and lack of supervision she experienced in the workplace that aggravated her major recurrent depression.

37.     Hunter ignored Barbiaux's request. Instead, he required her to discuss her request for disability accommodations with her Field Supervisor and the Director of SSVF.

5

38.     Upon information and belief, Hunter did not respond to Barbiaux's request for accommodations on August 11.

39.     On August 23, 2017, Barbiaux met with her Field Supervisor, Kellie Gore Donovan, and the Director of SSVF, Matt Buckley, at the Springhill Suites in Pittsburgh Mills, Pittsburgh, Pennsylvania to discuss her requested accommodations that were recommended by her treating psychologist.

40.     At the August 23 meeting, Barbiaux requested changes in the style of management and supervision she received at Soldier On. Specifically, she requested regular meetings to help prioritize tasks, open communication with supervisors regarding work expectations, step-by-step checklists, written instructions, typed minutes of meetings, relevant training, and written work assignments.

41.     At the August 23 meeting, Donovan informed Barbiaux that she was not permitted to return to work until further notice, despite her two-week FML expiring that day.

42.     On August 24, 2017, Barbiaux emailed Hunter with the same list of requested ADA accommodations she provided on August 11.

43.     Later that day, Hunter responded that her requests for accommodations were denied.

44.     In response to the Hunter's email, Barbiaux expressed her desire to return to work as soon as possible. Barbiaux also further clarified the difficulties she faced in the workplace and the recommendations she requested.

45.     Hunter never responded to Barbiaux's follow-up email.

6

46.     On August 25, 2017, Barbiaux provided Hunter with a Fitness for Duty Form that her psychologist completed, which included the psychologist's recommended accommodation of modifying Barbiaux's work environment in terms of management and supervision structure.

47.     At no time did Hunter request a Fitness for Duty Form from Barbiaux.  Rather, Barbiaux took the initiative to provide this form to Hunter.

48.     The form also certified that Barbiaux was able to perform the essential functions of her job and was fit to return to work on August 23, 2017.

49.     Barbiaux did not receive a response from Hunter to her email of August 25.

50.     On August 30, 2017, Barbiaux emailed Hunter expressing her concern over the fact that he had not responded to her last six emails and that she was still off of work with no indication of when she would be reinstated.

**Soldier On's Termination of Barbiaux's Employment**

51.     On September 6, 2017, fourteen days after her FML had ended, Hunter emailed Barbiaux to inform her that Soldier On had "finished our review with Soldier On staff and Counsel" and to schedule a meeting with himself, Donovan, and Buckley at a hotel conference room in Pittsburgh, Pennsylvania.

52.     On September 13, 2017, twenty-one days after her FML had ended, Barbiaux met with Hunter, Donovan, and Buckley at the Springhill Suites in Pittsburgh Mills, Pittsburgh, Pennsylvania.

53.     At the September 13 meeting, Barbiaux's employment with Soldier On was promptly terminated with no stated reason for the termination.

54.     Barbiaux was provided with a termination letter at the meeting.

55.     The letter did not provide any explanation for terminating Barbiaux's employment.

56.     Rather, the letter contained, in part, a defense of Soldier On's purported attempt to engage in an interactive process with Barbiaux to address her requested ADA accommodations.

57.     The letter also contained Soldier On's own factual determination that Barbiaux's complaints about her work environment and how it contributed to her depression and need for FML were unfounded.

58.     The letter further refuted the validity of Barbiaux's disability, despite the medical documentation she provided to Soldier On to prove the same.

59.     Finally, Barbiaux was provided a severance agreement, which she did not sign.

60.     At no time during the month of August did Barbiaux express an intention not to return to her position or to resign her position.

61.     On the contrary, Barbiaux anticipated that she would return to her position on August 23, and believed Soldier On felt the same way until the meeting on August 23 when she was informed to remain off work.

62.     Instead, Soldier On never allowed Barbiaux to return to her employment specialist position, or a similar position, after taking FML for her depression disability.

63.     Ultimately, Soldier On retaliated against Barbiaux for exercising her FMLA rights by terminating her employment.

## Count I - FMLA Retaliation

64.     Plaintiff incorporates by reference paragraphs 1 through 63 above as though set forth fully herein.

8

65.     Under the FMLA, it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. See 29 U.S.C. § 2615(a)(2).

66.     Soldier On is an "employer" as that term is defined by the FMLA. It has been engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year. See 29 U.S.C. § 2611(4)(A).

67.     Barbiaux is an "eligible employee" as that term is defined by the FMLA. She was employed for at least 1,250 hours of service during the previous 12 month period and employed at a worksite where 50 or more employees were employed within 75 miles of the worksite. See 29 U.S.C. § 2611(2)(A).

68.     Barbiaux engaged in protected activity by requesting and taking FMLA leave from August 8 - 23, 2017.

69.     Soldier On's decision to refuse to provide her with any ADA accommodations and terminate her employment on September 13, 2017 were adverse employment actions motivated by and causally connected to her protected activity under the FMLA.

70.     Soldier On's retaliation against Barbiaux was willful and intentional.

71.     Soldier On engaged in these retaliatory acts with malice and/ or reckless indifference to Barbiaux's civil rights protected by federal, state and local law.

72.     Soldier On's violations of the FMLA were not in good faith.

73.     As a direct and proximate result of Soldier On's violations of the FMLA, Barbiaux has suffered loss of income, fringe benefits, retirement benefits, and tuition benefits

provided by Soldier On to their employees, physical pain and suffering, personal humiliation, embarrassment, disruption of her personal and professional life, and loss of enjoyment of the ordinary pleasures of every day life.

WHEREFORE, Plaintiff respectfully requests this Honorable Court grant the following relief:

a. A judgement in favor of Plaintiff and against Defendant declaring Defendant's retaliatory practices to be in violation of the FMLA;

b. An award of compensatory and liquidated damages in the form of lost wages, including front pay, back pay, employment benefits, and other forms of compensation and actual monetary loss suffered as a result of Defendant's actions;

c. Award Plaintiff her reasonable attorneys' fees, expert fees, costs and pre- and post-judgment interest;

d. Award declaratory, injunctive and equitable relief against Defendant; and

e. Grant such other and further relief as the Court deems just and proper under the circumstances.

### Count II - FMLA Interference

74. Plaintiff incorporates by reference paragraphs 1 through 73 above as though set forth fully herein.

75. Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any rights provided" in the FMLA. See 29 U.S.C. § 2615(a)(1).

76.     Soldier On took an adverse action against Barbiaux by refusing to allow her to return to her position, or a similar position, after the completion of her FMLA period on August 23, 2017.

77.     Soldier On's action constituted an interference with and denial of Barbiaux's protected right to take FMLA leave and be reinstated to her position, or a similar position.

78.     Upon completion of her two week leave, Barbiaux was able to perform the essential functions of her job as she knew them to be since December 2014, which was verified by her treating psychologist in the Fitness for Duty certification.

79.     Soldier On's had no legitimate basis to deny her reinstatement.

80.     Soldier On's action was directly related to the exercise of Barbiaux's FMLA rights.

81.     Soldier On's interference was willful and intentional.

82.     Soldier On interfered with malice and/or reckless indifference to Barbiaux's civil rights protected by federal law.

83.     Soldier On's violations of the FMLA were not in good faith.

84.     As a direct and proximate result of Soldier On's violations of the FMLA, Barbiaux has been injured.

WHEREFORE, Plaintiff requests that this Court enter judgment in favor of Plaintiff and against Defendant for the following relief:

a.  A judgement in favor of Plaintiff and against Defendant declaring Defendant's interference to be in violation of the FMLA;

b.  Award Plaintiff economic compensatory damages;

11

c. Award Plaintiff liquidated damages;

d. Award Plaintiff her reasonable attorneys' fees, expert fees, costs and pre- and post-judgment interest;

e. Award declaratory, injunctive and equitable relief against Defendant; and

f. Grant such other and further relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

/s/ *Carolyn E. Paletta*
Carolyn E. Paletta, Esquire
PA I.D. No. 314230
STEELE SCHNEIDER
428 Forbes Avenue, Suite 700
Pittsburgh, PA 15219
412-235-7682
carolynpaletta@steeleschneider.com